Ethan Jones, WSBA No. 46911
Anthony Aronica, WSBA No. 54725
Yakama Nation Office of Legal Counsel
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
(509) 865-7268
ethan@yakamanation-olc.org
anthony@yakamanation-olc.org

Attorneys for the Confederated Tribes and Bands of the Yakama Nation

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CONFEDERATED TRIBES AND BANDS OF THE YAKAMA NATION, a sovereign federally recognized Indian Tribe,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF TOPPENISH, a municipality of the State of Washington<br><br>Defendant. | **Case No.: 1:24-cv-03189**<br><br>PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT<br><br><u>Expedited Treatment Requested:</u><br><u>Relief Needed Immediately</u><br><br>Hearing Date: November 21, 2024<br>Time: TBD<br>Court Room: TBD<br>Judge: Hon. Mary K. Dimke |

Pursuant to Fed. R. Civ. P. 65, Plaintiff, the Confederated Tribes and Bands of the Yakama Nation ("Yakama Nation"), respectfully moves the Court to immediately issue a temporary restraining order, and ultimately a preliminary

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT— 1

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

injunction, enjoining the City of Toppenish and all persons acting on the City's behalf from exercising civil regulatory jurisdiction to prevent the Yakama Nation from authorizing nonmembers to host a 24-hour emergency cold weather shelter on nonmember-owned fee lands within the Yakama Reservation.

As detailed below and supported by the accompanying Declarations of Mr. Ethan Jones and Ms. Jenece Howe, a temporary restraining order is necessary to ensure the Yakama Nation will not suffer certain irreparable harm if injunctive relief is not granted. The Yakama Nation Tribal Council acted to allow a nonmember entity to host a 24-hour emergency shelter on non-Indian fee land within the Yakama Reservation to protect unhoused Yakama Members from death or serious injury resulting from the current extreme weather conditions. The City of Toppenish purported to exercise civil regulatory authority with the full knowledge of the Yakama Nation's actions, and in direct conflict with the Yakama Nation's exercise of its own civil regulatory authority. If the City's actions are allowed to stand, enrolled Yakama Members will not be able to access 24-hour emergency cold weather shelter services within the Yakama Reservation and the Yakama Nation will be deprived of the full scope of its governmental authority reserved by Treaty.

Accordingly, the Yakama Nation requests expedited treatment of this Motion without written or oral notice to the adverse party and a decision by the Court as soon as is practicable in order to preserve the status quo and avoid irreparable harm to unhoused Yakama Members pending adjudication of this case. With that said, Yakama Nation Staff will make all reasonable attempts by phone and email to inform the City of Toppenish of today's hearing to address this Motion. A proposed order is attached.

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT— 2

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

## I.  INTRODUCTION

As alleged in the Complaint filed in this matter on November 20, 2024, ECF No. 1, this action concerns the City of Toppenish's attempt to prevent the Yakama Nation from authorizing the Yakima Valley Farmworkers Clinic to host the Yakama Nation's Emergency Shelter for Yakama Members and nonmembers who require shelter services. Defendant's actions violate the Yakama Nation's inherent sovereign and Treaty-reserved right to exercise civil jurisdiction over nonmembers concerning matters that threaten or directly impact the political integrity, health, and welfare of the Yakama Nation and Yakama Members.

The Yakama Nation respectfully requests that the Court grant its motion for a temporary restraining order, and ultimately a preliminary injunction, enjoining the City of Toppenish, and all persons acting on the City's behalf, from unlawfully exercising civil regulatory jurisdiction to prevent the Yakama Nation from authorizing the Yakima Valley Farmworkers Clinic to host a 24-hour emergency cold weather shelter on non-Indian fee land within the Yakama Reservation.

## II.  FACTUAL BACKGROUND

The Confederated Tribes and Bands of the Yakama Nation is a sovereign, federally recognized Indian Tribe pursuant to its inherent sovereignty and the rights reserved in the Treaty with the Yakamas of Jun 9, 1855, 12 Stat. 951 (1859) (hereafter the "Treaty of 1855"). In Article II of the Treaty of 1855, the Yakama Nation reserved the 1.4 million acre Yakama Reservation for its exclusive use and benefit, which includes the entirety of what is now known as the City of Toppenish. During the late 19th century and early 20th century, certain Yakama Reservation

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT— 3

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

lands passed out of federal ownership and into non-Indian ownership during a historical period known as the Allotment Era. While property ownership in those Reservation lands changed, the Yakama Nation retained its inherent sovereign jurisdiction throughout the Yakama Reservation over conduct that threatens or directly impacts the political integrity, health, or welfare of the Yakama Nation and its Members.

Today, the Yakama Nation is comprised of over 11,000 enrolled members, some of whom are unhoused in the City of Toppenish and the surrounding area within the Yakama Reservation. Each year the Yakama Reservation experiences a drop to freezing, or near freezing, temperatures and increased precipitation that creates hazardous and life-threatening conditions to unhoused Yakama Members and nonmembers. The Yakama Nation has previously operated 24-hour emergency cold weather shelters for the community and on September 10, 2024, the Yakama County Board of Commissioners awarded the Yakama Nation a $250,000 grant to operate a 24-hour emergency cold weather shelter for 2024 and 2025. Declaration of Ethan Jones in Supp. of Mot. For Temporary Restraining Order and Prelim. Inj., Ex. B (hereafter "Jones Decl."). Yakima Valley Farmworkers Clinic agreed to host the Yakama Nation's 24-hour emergency cold weather shelter inside a building owned and maintained by the Clinic and located within the Yakama Reservation. Declaration of Jenece Howe in Supp. of Mot. For Temporary Restraining Order and Prelim. Inj., ¶ 2 (hereafter ("Howe Decl."). The City of Toppenish has allowed a non-Indian 501(c)(3) entity to operate a 24-hour homeless shelter in the same facility in past years. Howe Decl. at ¶ 10.

In an attempt to achieve partnership between the Yakama Nation and the City of Toppenish, the Yakama Nation communicated its intent to open a 24-hour

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT— 4

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

emergency cold weather shelter to the City of Toppenish through multiple meetings. The Yakama Nation Tribal Council met with the City of Toppenish on at least three occasions between October 21, 2024 and November 1, 2024 and sent several letters communicating the Yakama Nation's intent to open the 24-hour emergency cold weather shelter and collaborate with City of Toppenish. Howe Decl. at ¶¶ 3-5; Jones Decl. Exs. D, E, F, G. The City of Toppenish remained neutral on proposed collaboration on a 24-hour emergency cold weather shelter during that time period. Howe Decl. at ¶¶ 4-5. On November 7, 2015, the Yakama Nation Tribal Council passed Tribal Council Resolution T-010-25 authorizing the 24-hour emergency cold weather shelter at the Yakima Valley Farmworkers Clinic. Jones Decl. Ex. C.

On November 15, 2024, the Yakama Nation informed Defendant of the Tribal Council Resolution and requested Defendant's cooperation. Jones Decl. Ex. D. Defendant informed the Yakama Nation in a letter dated November 18, 2024 that Defendant opposed the 24-hour emergency cold weather shelter for unspecified health and safety reasons and requested the shelter be limited to six (6) hours of daily operations. Jones Decl. Ex. E. On November 20, 2024 the Yakama Nation opened the emergency cold weather shelter and informed Defendant by letter that it would operate for 24-hours a day, but welcomed the opportunity to meet and discuss the City's unspecified health and safety concerns. Jones Decl. Ex. F. The City subsequently threatened enforcement action against the Yakima Valley Farmworkers Clinic's to prevent the Yakama Nation's 24-hour emergency cold weather shelter from operating for more than six (6) hours per day, which directly conflicts with the Yakama Nation Tribal Council Resolution authorizing operation of the Yakama Nation's 24-hour emergency cold weather shelter at the Yakima Valley Farmworkers Clinic in the City of Toppenish within the Yakama Reservation. Howe Decl. ¶ 9;

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT— 5

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

Jones Decl. Ex. C.

### III. ARGUMENT

Defendants have taken significant action that directly and illegally infringes upon the Yakama Nation's inherent sovereign power to exercise civil jurisdiction over Yakima Valley Farmworkers Clinic, a nonmember entity located on the Yakama Reservation, to operate the Emergency Shelter to protect the health and safety of unhoused Yakama Members. Defendants' actions expose Yakama Members to harm and increased risk of further injury, and by extension threaten the political integrity, health, and safety of the Yakama Nation. The Yakama Nation requests that this Court issue a temporary restraining order and preliminary injunction order pursuant to Fed. R. Civ. P. 65(b), enjoins the City of Toppenish from exercising civil regulatory authority to prevent the Yakama Nation from authorizing nonmembers to host or operate a 24-hour emergency cold weather shelter on nonmember-owned fee lands within the Yakama Reservation.

**A.    Standard for Temporary Restraining Order**

Temporary restraining orders are designed to preserve the status quo pending the ultimate outcome of litigation. They are governed by Fed. R. Civ. P. 65(b), which requires the moving party to show that "it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party . . . can be heard in opposition . . . ." Under Rule 65(b) and Ninth Circuit case law, a plaintiff may obtain a temporary restraining order only where they can "demonstrate that irreparable injury is likely in the absence of an injunction."

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT— 6

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

*Winter v. Natural Resources Defense Council, Inc*, 555 U.S. 7, 22 (2008). The analysis focuses on irreparability, "irrespective of the magnitude of the injury." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999).

The standards for a restraining order are basically the same as for a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co*. 240 F.3d 832, 839 (9th Cir. 2001). Courts are given considerable discretion in deciding whether a preliminary injunction should be ordered, and injunctive relief is not obtained as a matter of right, and it is also considered to be an extraordinary remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *See Sampson v. Murray,* 415 U.S. 61 (1974)*; Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co.,* 363 U.S. 528 (1960); *Stanley v. Univ. of Southern California,* 13 F.3d 1313 (9th Cir. 1994).

In the Ninth Circuit, a party seeking preliminary injunctive relief must demonstrate that "(1) it is 'likely to succeed on the merits,' (2) it is 'likely to suffer irreparable harm in the absence of preliminary relief,' (3) the balance of equities tips in [its] favor,' and (4) 'an injunction is in the public interest.'" *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (citing *Winter*, 555 U.S. at 20). The Ninth Circuit uses a "sliding scale" approach in which the elements are "balanced so that a stronger showing of one element may offset a weaker showing of another." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). Due to the exigent nature of preliminary relief, the Court may consider hearsay and other evidence that would otherwise be inadmissible at trial. *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).

Preliminary relief can take two forms: a prohibitory injunction or a mandatory injunction. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT— 7

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

571 F.3d 873, 878 (9th Cir. 2009). A prohibitory injunction prohibits a party from taking action and "preserve[s] the status quo pending a determination of the action on the merits." *Id.* at 878-79 (quoting *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988)). A mandatory injunction "orders a responsible party to 'take action.'" *Id.* at 879 (quoting *Meghrig v. KFC Western*, 516 U.S. 479, 484 (1996)). The Yakama Nation seeks a prohibitory temporary restraining order and preliminary injunction here.

**B.    The Yakama Nation Is Likely to Prevail on the Merits.**

Where disputes concern "nonmember conduct on non-Indian-owned fee land within the boundaries of [a] Reservation . . . [Courts] apply the Supreme Court's framework set forth in *Montana v. United States*, 450 U.S. 544, 101 S. Ct. 1245, 67 L. Ed. 2d 493 (1981), to determine whether the Tribes had regulatory jurisdiction . . . ." *FMC Corp. v. Shoshone-Bannock Tribes*, 942 F.3d 916, 931 (9th Cir. 2019). In *Montana*, the Supreme Court recognized "three bases for tribal regulatory jurisdiction over nonmember activities on non-Indian fee land within the boundaries of a reservation – the so-called *Montana* exceptions." *FMC Corp.*, 942 F.3d at 931.

First, tribes can regulate the activities of nonmembers "who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Montana*, 450 U.S. at 565. Second, tribes "retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Montana*, 450 U.S. at 566. Third, tribes can regulate nonmember conduct on non-Indian fee land within a reservation where Congress expressly authorized the

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT— 8

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

regulation by statute or treaty. *Strate v. A-1 Contractors*, 520 U.S. 438, 446 (1997). "States may not assert civil jurisdiction over the conduct or property of non-Indians in Indian country if it would cause interference with tribal self-government or a conflict with federal laws and policies." Cohen's Handbook of Federal Indian Law § 6.01(1) (generally citing *Williams v. Lee*, 358 U.S. 217 (1959), a cornerstone federal Indian law case).

Courts have applied the second *Montana* exception, which is the exception principally applicable here, to recognize the rights of tribes to regulate conduct that directly threatens the physical or economic health and safety of their tribal members. In *Big Horn County Electrical Coop. v. Alden Big Man*, 526 F. Supp. 3d 756 (D. Mont. 2020), the Montana District Court applied the second *Montana* exception to prevent a non-Indian electrical utility from shutting off a tribal member's electrical service during the winter months in violation of tribal law. *Alden Big Man*, 526 F. Supp. 3d at 772. The Court reasoned that shutting off electricity and, by extension, heat in the middle of winter posed a "danger to the health and welfare of Big Man, and potentially to any Tribal member who obtains electrical service from BHCEC within the reservation boundaries, and thus the Crow Tribe itself." *Alden Big Man*, 526 F. Supp. 3d at 772. In other words, nonmember conduct on non-Indian fee property that threatens the health and safety of tribal members within a Reservation constitutes a threat to the tribe itself, and is therefore subject to tribal regulation under the second *Montana* exception.

The Montana District Court relied on its prior decision in *Glacier Elec. Coop., Inc. v. Gervais*, 2015 U.S. Dist. LEXIS 193816, 2015 WL 13650531 (D. Mont. 2015). In that case, the Blackfeet Tribal Court exercised jurisdiction over a non-Indian electrical utility operating within the Blackfeet Reservation. The utility

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT— 9

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

challenged the Tribal Court's jurisdiction, and the Montana District Court upheld the Tribal Court's exercise of jurisdiction relying in relevant part on the Tribal Court Plaintiffs' allegations that the utility was conducting winter shut-offs in violation of tribal law.  In sum, the Tribal Court had jurisdiction under the second *Montana* exception because depriving tribal members of access to heat during the winter constituted a sufficient threat to the Blackfeet Tribe itself to establish tribal regulatory jurisdiction.

While these cases confirm that threats against the lives of tribal members are sufficient to trigger a tribe's authority to regulate nonmember conduct on non-Indian fee land within a Reservation—and the instant dispute similarly considers threats against the lives of enrolled Yakama Members—the bar is not so high to trigger tribal authority.  In *FMC Corp. v. Shoshone-Bannock Tribes*, the Ninth Circuit determined that the second *Montana* exception was satisfied where a non-Indian company was storing millions of gallons of hazardous waste on fee property within a Reservation that threatened the Reservation's environment and natural resources.  *FMC Corp.*, 942 F.3d at 934-35.  In *Rincon Mushroom Corp. of Am. v. Mazzetti*, the Ninth Circuit upheld the Rincon Band of Luiseno Indians' exercise of regulatory jurisdiction under the second *Montana* exception over a non-Indian fee property within their Reservation that posed a fire risk to the Tribe's adjacent casino and an environmental risk to the Tribe's groundwater. 2024 U.S. App. LEXIS 14952, 2024 WL 3066049, at 3-5 (9th Cir. 2024) (unpublished).

Here, the Yakama Nation has regulatory jurisdiction under the second *Montana* exception to allow the Yakima Valley Farmworker's Clinic to host the Yakama Nation's 24-hour emergency cold weather shelter on nonmember owned fee property within the Yakama Reservation.  The Yakama Reservation is experiencing

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT— 10

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

extreme weather conditions in the form of freezing temperatures, rainfall, and snowfall. The Yakama Nation has enrolled Yakama Members who are unhoused, and face the threat of severe injury or death as a result of these extreme weather conditions. To protect its enrolled Yakama Members, the Yakama Nation Tribal Council passed Resolution T-010-25 to authorize a 24-hour cold weather shelter on the Yakima Valley Farmworkers Clinic's fee property within the Yakama Reservation. The City of Toppenish's actions to prevent the Yakama Nation from authorizing the Yakima Valley Farmworkers Clinic to host a 24-hour emergency cold weather shelter are nonmember actions on non-Indian fee property that threaten the health and safety of unhoused Yakama Members within the Yakama Reservation. As demonstrated by the electrical utility cases discussed above, threats to the lives of enrolled Yakama Members legally constitute threats to the political integrity, health, and safety of the Tribe itself. The second *Montana* exception recognizes the Yakama Nation's regulatory jurisdiction to allow this 24-hour emergency cold weather shelter under these circumstances.

Where the Yakama Nation acts to protect its enrolled Yakama Members from nonmember conduct on non-Indian fee land within the Yakama Reservation, the City of Toppenish may not assert civil jurisdiction and act in a manner that conflicts with the Yakama Nation's governmental actions. Cohen's Handbook of Federal Indian Law § 6.01(1) (generally citing *Williams v. Lee*, 358 U.S. 217 (1959)). That would interfere with tribal self-government and the supremacy of the Treaty of 1855 as to conflicting state laws, which is not allowed. U.S. CONST. art. VI, cl. 2. It would deprive the Yakama Nation of the right to make its own laws and to live by those laws. *Williams*, 358 U.S. at 220 ("Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT— 11

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

reservation Indians to make their own laws and be ruled by them."). The Yakama Nation is likely to prevail on the merits here.

The relief that the Yakama Nation seeks here is narrow in scope. Where weather events threaten the health and safety of enrolled Yakama Members, and by extension the political integrity, health, or safety of the Yakama Nation, the Yakama Nation has the sovereign right to authorize nonmembers to host a 24-hour emergency cold weather shelter on their non-Indian fee land within the Yakama Reservation. The Yakama Nation is trying to save its enrolled members lives. The Yakama Nation seeks nothing more here than that.

### C. The Yakama Nation Is Likely To Suffer Irreparable Harm In The Absence Of Preliminary Relief.

The Yakama Nation and Yakama Members face more than the "possibility of irreparable harm." *Winter v. Natural Resources Defense Council, Inc*, 555 U.S. 7, 22 (2008). Rather, the Yakama Nation is able to demonstrate the likelihood of immediate, concrete, irreparable harm absent this Court's intervention. The City of Toppenish's actions to prevent the Yakama Nation from authorizing the Yakima Valley Farmworkers Clinic to host a 24-hour emergency cold weather shelter, and instead only allow a 6-hour emergency cold weather shelter, have already caused Yakama Members to survive without shelter or heat during the extreme weather conditions that the Yakama Reservation is currently experiencing, and will continue to experience for the duration of the 2024-2025 winter season.

The City of Toppenish's assertion of civil regulatory jurisdiction here in direct conflict with the Yakama Nation's exercise of civil regulatory jurisdiction to protect itself and its enrolled Yakama Members directly harms the Yakama Nation by undermining the Yakama Nation's sovereign authority to govern

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT— 12

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

Yakama Members. *Williams*, 358 U.S. at 223 ("There can be no doubt that to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves.").

If injunctive relief is not granted, the immediate irreparable harm to the Yakama Nation will be the death or serious injury of unhoused Yakama Members within the Yakama Reservation, the frustration of limited governmental resources implemented for the health and safety of Yakama Members, and interference with Yakama Nation's right to make its own laws and live by them.

**D.    In Balancing Equities, the Public Interest Favors Yakama Nation.**

The public interest is served when governments and governmental actors act only within the scope of their jurisdiction. During extreme weather conditions, the public interest is also served by offering 24-hour extreme cold weather shelter services to enrolled Yakama Members, as well as to the greater Yakama Reservation community regardless of enrollment status. These services will help protect the Yakama Reservation's unhoused population from death or serious injury during the 2024-2025 winter season. It will protect unhoused nonmember Indians and non-Indians who will also receive shelter services. The Yakama Nation has the right to plan for and efficiently use its governmental resources as a public service to Yakama Members. As such, the balance of hardships tips sharply in Yakama Nation's favor given the City of Toppenish's actions to prevent the Yakama Nation from authorizing the Yakima Valley Farmworkers Clinic to host a 24-hour emergency cold weather shelter on non-Indian fee land within the Yakama Reservation.

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT— 13

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

### E.    Posting a Bond Should be Waived or Set at a Nominal Sum.

Fed. R. Civ. P. 65 references the posting of a security upon issuance of a temporary restraining order; however, the Court has authority to dispense with the security or to require mere nominal security. *People ex. rel. Van de Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1316, 1325-26 (9th Cir. 1985). "The court has discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review." *Id*. at 1325. Here, the Yakama Nation is attempting to protect its unhoused Yakama Members, its Treaty, and its sovereignty. A bond would come directly from Tribal resources needed by Yakama Nation to provide essential governmental services. No bond should be required.

## IV.    CONCLUSION

The Yakama Nation requests that the Court grant its motion for a temporary restraining order, and ultimately a preliminary injunction, enjoining the City of Toppenish, and all persons acting on the City's behalf, from unlawfully exercising civil regulatory jurisdiction to prevent the Yakama Nation from authorizing the Yakima Valley Farmworkers Clinic to host a 24-hour emergency cold weather shelter on non-Indian fee land within the Yakama Reservation.

Respectfully submitted this 21st day of November, 2024.

 *s/Ethan Jones*
Ethan Jones, WSBA No. 46911
Anthony Aronica, WSBA No. 54725
YAKAMA NATION OFFICE OF LEGAL COUNSEL
P.O. Box 151, 401 Fort Road
Toppenish, WA 98948
Telephone: (509) 865-7268

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT— 14

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

Facsimile: (509) 865-4713
ethan@yakamanation-olc.org
anthony@yakamanation-olc.org

*Attorneys for the Confederated Tribes and Bands of the Yakama Nation*

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT— 15

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268