Ethan Jones, WSBA No. 46911
Anthony Aronica, WSBA No. 54725
Yakama Nation Office of Legal Counsel
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
(509) 865-7268
ethan@yakamanation-olc.org
anthony@yakamanation-olc.org

Attorneys for the Confederated Tribes and
Bands of the Yakama Nation

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CONFEDERATED TRIBES AND BANDS OF THE YAKAMA NATION, a sovereign federally recognized Indian Tribe,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF TOPPENISH, a municipality of the State of Washington<br><br>Defendant. | **Case No.: 1:24-cv-03189**<br><br>PLAINTIFF YAKAMA NATION'S SUPPLEMENTAL RESPONSE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION<br><br>Hearing Date: December 18, 2024<br>Time: 10:00 am<br>Location: Yakima Courtroom 324<br>Judge: Hon. Mary K. Dimke |

Defendant City of Toppenish does not meaningfully refute the Yakama Nation's argument that the Yakama Nation has civil jurisdiction to authorize the Yakima Valley Farm Workers Clinic to host a shelter on non-Indian fee lands within the Yakama Reservation to prevent the serious injury or death of its unhoused Yakama Members. The Yakama Nation is therefore likely to succeed on the merits. Defendant does not challenge, and therefore concedes the Yakama Nation's assertion

PLAINTIFF YAKAMA NATION'S SUPPLEMENTAL
RESPONSE IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION — 1

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

that it is likely to face immediate, concrete, irreparable harm from the serious injury or death of unhoused Yakama Members absent this Court's intervention. Instead, Defendant advances a policy argument that unhoused Yakama Members are safer sleeping in below freezing conditions rather than a building that lacks automatic sprinklers and automatic fire alarms; the same building where Defendant has permitted a non-Indian organization to operate a 24-hour shelter for years. The balance of equities sharply favors the Yakama Nation's interest in protecting its unhoused Yakama Members—as well as any other community members needing shelter—from extreme weather conditions, and the public interest is served by saving lives, and where governments act only within the scope of their authority.

All four elements of the preliminary injunction standard strongly support maintaining the Court's temporary restraining order as a preliminary injunction for the duration of the litigation. The Yakama Nation respectfully requests that the Court grant its motion for a preliminary injunction, enjoining the City of Toppenish, and all persons acting on the City's behalf, from unlawfully exercising civil regulatory jurisdiction to prevent the Yakama Nation from authorizing the Yakima Valley Farmworkers Clinic to host a 24-hour emergency cold weather shelter ("Emergency Shelter") on non-Indian fee land within the Yakama Reservation.

## III.    ARGUMENT

**A.    The Yakama Nation Is Likely to Prevail on the Merits.**

   *i.    The Yakama Nation Has Civil Regulatory Jurisdiction Under The Second Montana Exception.*

The Yakama Nation is likely to prevail in its argument that it has civil jurisdiction to authorize the Yakima Valley Farm Workers Clinic to host a shelter on non-Indian fee lands within the Yakama Reservation to prevent the serious injury or

PLAINTIFF YAKAMA NATION'S SUPPLEMENTAL RESPONSE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 2

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

death of its unhoused Yakama Members. "Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands." *Strate v. A-1 Contractors*, 520 U.S. 438, 446 (1997) (quoting *Montana v. United States*, 450 U.S. 544 (1981)). The Supreme Court's decision in *Montana v. United States*, "is the pathmarking case concerning tribal civil authority over nonmembers." *Strate*, 520 U.S. at 445. As set forth in the Yakama Nation's Motion, *Montana* recognized two situations where tribes have civil jurisdiction over non-Indians on non-Indian fee lands within their reservation: (1) where non-Indians enter consensual relationships with the Tribe or its members, or (2) where non-Indian conduct threatens or impacts the Tribe's political integrity, economic security, or health or welfare. *Id*. at 446. Either situation by itself is sufficient to establish tribal civil jurisdiction. *See, e.g., Brendale v. Confederated Tribes & Bands of the Yakima Indian Nation*, 492 U.S. 408 (1989). The Supreme Court also recognized Congress's authority to extend tribal civil jurisdiction to non-Indians on non-Indian fee lands within a reservation. *Strate*, 520 U.S. at 446.

The United States Supreme Court's plurality decision in *Brendale v. Confederated Tribes & Bands of the Yakima Indian Nation* is instructive here. In *Brendale*, the Supreme Court consolidated two zoning disputes arising from the Yakama Reservation and ultimately upheld both decisions originally issued by this Court. *Brendale*, 492 U.S. at 414, 432-33; *see also Yakima Indian Nation v. Whiteside*, 617 F. Supp. 735 (E.D. Wash. 1985) (hereafter "*Whiteside I*"); *Yakima Indian Nation v. Whiteside*, 617 F. Supp. 750 (E.D. Wash. 1985) (hereafter "*Whiteside II*"). In the first decision, referred to as *Whiteside I*, this Court recognized the Yakama Nation's civil jurisdiction over non-Indians under the second *Montana* exception where a proposed recreational housing development 25 miles southwest

PLAINTIFF YAKAMA NATION'S SUPPLEMENTAL RESPONSE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 3

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

of White Swan posed a threat to cultural and spiritual values of the Yakama Reservation's forested acres. As the Supreme Court summarized:

> "The District Court looked to this Court's opinion in *Montana v. United States*, 450 U.S. 544 (1981), as controlling whether an Indian tribe has authority to regulate activities of nonmembers of the tribe on fee lands. The District Court determined that there was no evidence of any 'consensual relationship' between the Yak[a]ma Nation and Wilkinson and Brendale that would extend the authority of the Tribe to the fee lands. But after making detailed findings of fact, the court concluded that 'Brendale's proposed development does indeed pose a threat to the political integrity, the economic security and the health and welfare of the Yak[a]ma Nation,' and therefore the Tribe has authority to impose its zoning regulations on that property. The District Court then proceeded to determine that Yakima County was pre-empted from exercising concurrent zoning authority over the land in the closed area because its interests in regulating the land were minimal while the Tribe's interests were substantial."

*Brendale*, 491 U.S. at 419-420 (internal citations omitted). Where a non-Indian's conduct on their fee property within the Yakama Reservation impacts the political integrity, economic security, or health and welfare of the Yakama Nation, the Yakama Nation has civil jurisdiction to regulate that conduct, which pre-empts any competing exercise of state authority.

In contrast, in *Whiteside II* this Court rejected the Yakama Nation's exercise of civil zoning jurisdiction where non-Indians proposed a housing development on fee lands within the Yakama Reservation, located on the north side of Ahtanum Ridge, just south of the Yakima Airport. *Whiteside II*, 617 F. Supp. at 758. The Court

PLAINTIFF YAKAMA NATION'S SUPPLEMENTAL RESPONSE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 4

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

explained that the proposed housing development was not in the vicinity of Tribal food gathering places, would not impact the Yakama Nation's economic interests, and posed no threat to the Yakama Nation's natural resource interests. *Id.* at 755. The criteria for the second *Montana* exception were not satisfied, and Yakima County was allowed to apply its zoning code to the parcel. *Id.* at 758.

Here, the Yakama Nation asserts that the threat of serious injury or death posed to unhoused Yakama Members by shutting down the Emergency Shelter during extreme weather conditions represents a far greater threat to the political integrity, health, or safety of the Yakama Nation than the zoning interests found to satisfy the second *Montana* exception in *Whiteside I*. The Yakama Nation maintains its existence as a sovereign Nation by virtue of its more than 11,000 enrolled Yakama Members. Yakama Members carry the unwritten laws, teachings, ceremonies, language, and songs of their ancestors, which they pass on to their children just as their elders passed on to them. The Yakama Nation cannot stand the preventable loss of a fluent sahaptin-language speaker, or a fisherman who knows the skill of building fishing scaffolds and dip nets, or a picker who knows where and when to go to the best huckleberry fields and camas patches, or a longhouse member who carries knowledge of *Washat* (the Yakama Nation's religion) songs and longhouse ceremonies. Every Yakama Member is critically important to the Yakama Nation's political integrity, health, and safety, and the Yakama Nation has every right under the second *Montana* exception to protect those vital sovereign interests through the exercise of civil regulatory jurisdiction throughout the Yakama Reservation.

Defendant's Response does not meaningfully address this legal framework, which was set forth in detail in the Yakama Nation's Motion. Rather, Defendant incorrectly states "that Indian tribes do not that [sic] have jurisdiction over non-

PLAINTIFF YAKAMA NATION'S SUPPLEMENTAL RESPONSE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 5

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

Indians," which stands at odds with more than 40 years of federal Indian law precedent. ECF No. 12 at 2; *Montana*, 450 U.S. 544. Defendant reached this erroneous interpretation by citing *Oliphant v. Suquamish Indian Tribe*, which addresses the scope of Tribal *criminal* jurisdiction over non-Indians in Indian Country; not *civil* jurisdiction. *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 212 (1978). Defendant also seeks to distinguish *Glacier Electric Cooperative, Inc. v. Gervais* from this case by reasoning that "the Electric Cooperative serves electricity to the Black Feet Reservation, including Cooperative members who reside on trust land . . . ," whereas the property at issue here is non-Indian fee land within the Yakama Reservation. ECF No. 12 at 2. To the contrary, the district court's analysis under both *Montana* exceptions is prefaced on "Glacier Electrics['] actions t[aking] place exclusively on non-Indian fee land . . . ." ECF No. 4-2 at 53. Defendant's Response is otherwise devoid of legal citation and amounts to a policy argument that unhoused Yakama Members are safer sleeping in below freezing conditions for months on end rather than a building where Defendant has admittedly permitted a non-Indian organization to operate a 24-hour shelter for years.

The second *Montana* exception recognizes the Yakama Nation's regulatory jurisdiction to allow a 24-hour emergency cold weather shelter to protect its unhoused Yakama Members from extreme weather conditions. The Yakama Nation is likely to prevail in its argument, which strongly supports the issuance of a preliminary injunction for the duration of this litigation.

    *ii.    Defendant's State Law Arguments Are Inapposite, But Similarly Support Plaintiff's Operation Of The Emergency Shelter.*

Rather than challenge the Yakama Nation's federal Indian law arguments, Defendant argues as a matter of state law that the Yakama Nation does not constitute

PLAINTIFF YAKAMA NATION'S SUPPLEMENTAL RESPONSE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 6

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

a religious organization under RCW § 35.21.915 sufficient to avoid municipal building codes. ECF No. 12 at 4-5. Defendant's state law arguments are not relevant to the federal question presented and federal Indian law-based arguments asserted here. The Yakama Nation does not have to establish itself as a religious organization under state law to exercise civil jurisdiction over non-Indian conduct on non-Indian fee lands within its Reservation. *See, e.g., Montana*, 450 U.S. 544.

Even if RCW § 35.21.915 applied here, state law does not contradict the Yakama Nation's operation of the Emergency Shelter at the Yakima Valley Farm Worker's Clinic building. RCW § 35.21.915 restricts local governments' ability to impose regulations on homeless shelters operated by "religious organizations," which is defined to include the federally protected practice of a recognized religious assembly, school, or institution that owns or controls real property." RCW § 35.21.915(6)(c). When a religious organization operates a homeless shelter, local municipalities are prohibited from enacting laws that impose conditions on the operation of the shelter "other than those necessary to protect public health and safety, and that do not substantially burden the decisions or actions of a religious organization regarding the location of housing or shelter . . . ." RCW § 35.21.915(2)(a). The Yakama Nation meets the state's definition for a "religious organization," notwithstanding Defendant's refusal to recognize the *Washat* faith, practiced by tens of thousands of Yakama Members across generations, as a religion.

The Yakama Nation owns, controls, or maintains more than half a dozen longhouses for the observance and practice of the *Washat* religion. Decl. of Gerald Lewis in Supp. Of Yakama Nation's Supplemental Resp. in Supp. of Mot. For Prelim. Injunction at 3-4 (Dec. 10, 2024). The Yakama Nation's governmental services and the health and safety of Yakama Members are improved through the

PLAINTIFF YAKAMA NATION'S SUPPLEMENTAL RESPONSE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 7

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

maintenance of religious buildings, cemeteries, the observance of religious holidays, personnel policies that accommodate for the administration of religious and cultural practices, and the frequent invocation of the Creator's law in the administration of governmental services. *Id.* at 4. *Washat* religious teachings are handed down through the oral tradition of longhouse and shorthouse practices. *Id.* at 2. The Emergency Shelter protects Yakama Members who carry teachings of "the Creator's law [which] is passed through the unwritten telling of stories; teaching songs; the act of fishing, hunting, or gathering . . . and, through all manner of human interactions." *Id.* at 3. Every Yakama Member carries irreplaceable Indigenous Knowledge through their lived experience in the traditional, cultural, or religious practices. *Id.* The loss of any Yakama Member diminishes the cultural endowment for all future generations of Yakamas yet to be born. *Id.*

In 1968, Congress enacted the Indian Civil Rights Act, which reaffirmed existing federal precedent that federally recognized Indian tribes are not subject to the Establishment Clause of the United States Constitution. 25 U.S.C. § 1301 et seq.; *see also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 63 (1978). Then, in 1978, Congress passed the American Indian Religious Freedom Act ("AIRFA") in response to ongoing discrimination against Native American religions. 42 U.S.C. § 1996. AIRFA established the United States' policy to "protect and preserve for American Indians their inherent right of freedom to believe, express, and exercise the traditional religions of the American Indian . . . ." *Id.* The Yakama Nation exercised these rights by establishing *Washat* as its religion, and by incorporating the *Washat* faith throughout its governmental operations.

Applying RCW § 35.21.915's definition of "religious organization" to the Yakama Nation, the Yakama Nation is operating the Emergency Shelter as an

PLAINTIFF YAKAMA NATION'S SUPPLEMENTAL RESPONSE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 8

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

exercise of its jurisdiction, but also as an exercise of its *Washat* teachings; i.e., a federally protected practice of a recognized religious assembly. The Yakama Nation obtained the Yakima Valley Farm Workers Clinic's agreement to allow the Yakama Nation to use the facility for the Emergency Shelter, which the Yakama Nation authorized by Tribal Council Resolution T-010-25. The Yakama Nation satisfies RCW § 35.21.915's definition of "religious organization." Even if RCW § 35.21.915 is applied, the Yakama Nation is a religious organization and Defendant is restricted from imposing requirements, even public health and safety requirements, that substantially burden the Yakama Nation's decision on where to locate the shelter.

With that said, the issue presented here is not whether the Yakama Nation is a "religious organization," or whether Defendant's concerns are actual public health and safety concerns, or whether Defendant's enforcement efforts substantially burden the Yakama Nation's ability to locate its shelter. The issue is the Yakama Nation's sovereign authority to authorize the Yakima Valley Farm Workers Clinic to host the Emergency Shelter within the Yakama Reservation. Defendant's state law arguments are pre-empted by federal law. *Rice v. Olson*, 324 U.S. 786, 789 (1945) ("[t]he policy of leaving Indians free from state jurisdiction and control is deeply rooted in the Nation's history.").

**B.   In Balancing Equities, the Public Interest Favors Yakama Nation.**

Defendant's Response does not directly challenge the Yakama Nation's equities and interests asserted in its Motion, but instead counters by identifying two health and safety concerns with the operation of the Emergency Shelter in the Yakima Valley Farm Workers Clinic's building: fire sprinklers and fire alarms. ECF No. 12 at 5. The Yakama Nation has installed six fire extinguishers and smoke and carbon monoxide alarms in the Emergency Shelter, one in each room of the facility.

PLAINTIFF YAKAMA NATION'S SUPPLEMENTAL RESPONSE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 9

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

Decl. of Daylene Fiander in Supp. of Yakama Nation's Supplemental Resp. in Supp. of Mot. For Prelim. Injunction at 2-3 (December 10, 2024). Copies of an Emergency Exit Plan are posted next to the fire extinguishers, which depict the Emergency Shelter floorplan, the building's three exterior doorways, evacuation routes, and a designated meeting place. *Id.* at 3. The Emergency Shelter is staffed overnight. *Id.*

Between November 20, 2024 and December 8, 2024, the Emergency Shelter served 110 unique individuals. *Id.* at 2. In the past week, the Emergency Shelter has served its maximum capacity of 50 beds on at least two occasions, and many of the individuals would have "nowhere else to go" and be exposed to dangerous conditions without overnight services. *Id.* As the Declaration of Timothy B. Smith concedes, the City allowed a non-Indian organization to operate a 24-hour shelter out of the same facility in 2020, 2021, and 2022 without addressing either of Defendant's fire safety concerns. ECF No. 13 at 4-5. In reality, Fire Chief Smith's actual concern has little to do with fire safety. Smith Decl. at 5. Instead, he is concerned with "assaults and drug overdoses at the [prior non-Indian operated] shelter because of the lack of supervision or control . . ." and the resulting "additional burden on City emergency services." Smith Decl. at 5.

The Yakama Nation's Emergency Shelter does not suffer from the same 'lack of supervision or control,' and Defendant makes no allegation to the contrary. Rather, the Emergency Shelter provides the Yakama Nation with the best opportunity for meaningful intervention for unhoused Yakama Members by providing walking access to nearby Village of Hope resources, like its food or clothing bank, domestic violence support, behavioral health treatment, substance abuse intervention, housing assistance, and other wraparound social services. Fiander Decl. at 4. The Yakama Nation's operation of the Emergency Shelter is an important tool to address

PLAINTIFF YAKAMA NATION'S SUPPLEMENTAL RESPONSE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 10

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

homelessness throughout the Yakama Reservation, and specifically within the City of Toppenish. Depriving unhoused Yakama Members of these services will not solve Defendant's crime and drug overdose concerns, but it will threaten unhoused Yakama Members' physical safety due to our current extreme weather conditions.

The Yakama Nation's and the public's interest in operating the Emergency Shelter to save unhoused Yakama Members and other community members from serious injury or death far outweighs Defendant's and the public's interest in ensuring that a different type of fire alarm and fire extinguisher are installed in the host building. The Court should maintain the status quo and issue a preliminary injunction supporting the Yakama Nation's civil jurisdiction to allow the Yakima Valley Farm Workers Clinic to host the Emergency Shelter to protect unhoused Yakama Members from serious injury or death due to extreme weather conditions.

### IV.    CONCLUSION

The Yakama Nation requests that the Court grant its motion for a preliminary injunction, enjoining the City of Toppenish, and all persons acting on the City's behalf, from exercising civil jurisdiction to prevent the Yakama Nation from authorizing the Yakima Valley Farmworkers Clinic to host a 24-hour emergency cold weather shelter on non-Indian fee land within the Yakama Reservation.

Respectfully submitted this 11th day of December, 2024.

Ethan Jones, WSBA No. 46911
Anthony Aronica, WSBA No. 54725
YAKAMA NATION OFFICE OF LEGAL COUNSEL
P.O. Box 151, 401 Fort Road
Toppenish, WA 98948
Telephone: (509) 865-7268
Facsimile: (509) 865-4713
ethan@yakamanation-olc.org

PLAINTIFF YAKAMA NATION'S SUPPLEMENTAL RESPONSE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 11

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

anthony@yakamanation-olc.org

*Attorneys for the Confederated Tribes and Bands of the Yakama Nation*

PLAINTIFF YAKAMA NATION'S SUPPLEMENTAL RESPONSE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 12

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268