Daniel B. Heid, WSBA No.8217
Toppenish City Attorney
Kerr Ferguson Law PLLC
1950 Keene Road, Bldg. F-100
Richland, Washington 99352
E-Mail: dheid@kerrlawgroup.net
Phone: (509) 735-1542, Fax: (509) 735-0506
Cell: (206) 321-7672

Attorney for Defendant, City of Toppenish

# UNITED STATES DISTRICT COURT
# FOR THE
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CONFEDERATED TRIBES AND BANDS OF THE YAKAMA NATION, a sovereign federally recognized Indian Tribe,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF TOPPENISH, a municipal Corporation of the State of Washington,<br><br>Defendant. | No. 1:24-CV-3189-MKD<br><br>DECLARATION OF DANIEL B. HEID REGARDING THE CITY'S PAST INTERPRETATION OF RCW 35.21.915 AND 35A.21.360 |

I, Daniel B. Heid, being first duly sworn upon oath, depose and say:

In connection with the above reference matter and the argument before the Court on December 18, 2024, following a statement in argument by the attorney

DECLARATION OF DANIEL B. HEID REGARDING THE CITY'S PAST INTERPRETATION OF RCW 35.21.915 AND 35A.21.360 - Page 1

Daniel B. Heid
Toppenish City Attorney
Kerr Ferguson Law PLLC
1950 Keene Road, Bldg. F-100
Richland, Washington 99352
Phone: (509) 735-1542

for the Plaintiff that, in years past, the City did allow a religious organization to utilize the same facilities sought now to be used by the plaintiff without the requirements of a sprinkler system, the Court requested that the City of Toppenish, Defendant, provide information regarding the same.

Checking with individuals who were working in the City's Fire Department at that time (2020), a request by a City Fire Department employee was made of a municipal attorney in Yakima to explain the interpretation and parameters of RCW 35A.21.360 (and RCW 35.21.915). I was advised that the interpretation was consistent with the language of the statute as it existed prior to its amendment that same year, to wit: [per subsection 2], a religious organization operating a shelter could do so without complying with certain codes and the city is precluded from adopting codes, except as necessary for health and safety.

However, as is indicated in the attachment [Exhibit to Declaration of Daniel B. Heid, included herein by reference] (a portion of) Engrossed Substitute House Bill 1754 (adopted as chapter 223, laws of 2020), RCW 35A.21.360 and 35.21.915 were amended that same year. That adoption added the language of subsection seven which indicates that if the codes were in effect prior to 2011 (even if amended), they control. As it turns out. During 2023, I was contacted as a

DECLARATION OF DANIEL B. HEID REGARDING THE CITY'S PAST INTERPRETATION OF RCW 35.21.915 AND 35A.21.360 - Page 2

Daniel B. Heid
Toppenish City Attorney
Kerr Ferguson Law PLLC
1950 Keene Road, Bldg. F-100
Richland, Washington 99352
Phone: (509) 735-1542

consultant by the City of Toppenish to discuss these same statues. I interpreted them for the City consistent with their inclusion of subsection seven, that as long as the health and safety codes were adopted prior to 2011 (even if amended) and don't expressly prohibit residential shelters, and have not been declared unconstitutional, the regulations in effect would remain in effect, even if the property were used by a religious organization for shelter purposes. This was prior to my recent appointment as City Attorney, but my opinion/interpretation regarding the statutes' subsection seven is the same today.

From my perspective, the change in the language of the statutes appears to be the explanation for the change in the City's position from 2020. That was at least consistent with my involvement with these matters.

Respectfully submitted this 2nd day of January, 2025.

s/DANIEL B. HEID, WSBA No. 8217
Attorney for Defendant City of Toppenish
Kerr Ferguson Law, PLLC
1950 Keene Road, Building F-100
Richland, Washington 99352
Telephone: (509) 735-1542
Email: dheid@kerrlawgroup.net

DECLARATION OF DANIEL B. HEID REGARDING THE CITY'S PAST INTERPRETATION OF RCW 35.21.915 AND 35A.21.360 - Page 3

Daniel B. Heid
Toppenish City Attorney
Kerr Ferguson Law PLLC
1950 Keene Road, Bldg. F-100
Richland, Washington 99352
Phone: (509) 735-1542

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of January, 2025, I electronically served the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Ethan Jones, WSBA No. 46911
ethan@yakamanation-olc.org

Anthony Aronica, WSBA No. 54725
anthony@yakamanation-olc.org

Nicholas Kahmann, WSBA No. 60602
nick@yakamanation-olc.org

s/DANIEL B. HEID, WSBA No. 8217
Attorney for Defendant City of Toppenish
Kerr Ferguson Law, PLLC
1950 Keene Road, Building F-100
Richland, Washington 99352
Telephone: (509) 735-1542
Email: dheid@kerrlawgroup.net

DECLARATION OF DANIEL B. HEID REGARDING THE CITY'S PAST INTERPRETATION OF RCW 35.21.915 AND 35A.21.360 - Page 4

Daniel B. Heid
Toppenish City Attorney
Kerr Ferguson Law PLLC
1950 Keene Road, Bldg. F-100
Richland, Washington 99352
Phone: (509) 735-1542

# EXHIBIT TO DECLARATION OF DANIEL B. HEID

(Showing changes to RCW 35.21.915 & 35A.21.360 between 2020 and 2020)

---

**ENGROSSED SUBSTITUTE HOUSE BILL 1754**

---

AS AMENDED BY THE SENATE

Passed Legislature - 2020 Regular Session

**State of Washington        66th Legislature        2019 Regular Session**

**By** House Housing, Community Development & Veterans (originally sponsored by Representatives Santos, Jinkins, and Pollet)

READ FIRST TIME 02/21/19.

1    AN ACT Relating to the hosting of the homeless by religious
2  organizations; amending RCW 36.01.290, 35.21.915, and 35A.21.360; and
3  creating a new section.

4  BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF WASHINGTON:

5
6
7
8
9
10
11
12
13
14
15          Pertinent language starts on Page 8 of the Bill.
16
17
18
19
20
21

1     Sec. 3.  RCW 35.21.915 and 2010 c 175 s 3 are each amended to
2  read as follows:
3     (1) A religious organization may host ((temporary encampments
4  for)) the homeless on property owned or controlled by the religious
5  organization whether within buildings located on the property or
6  elsewhere on the property outside of buildings.
7     (2) Except as provided in subsection (7) of this section, a city
8  or town may not enact an ordinance or regulation or take any other
9  action that:
10    (a) Imposes conditions other than those necessary to protect
11 public health and safety and that do not substantially burden the
12 decisions or actions of a religious organization regarding the
13 location of housing or shelter, such as an outdoor encampment, indoor
14 overnight shelter, temporary small house on-site, or vehicle resident
15 safe parking, for homeless persons on property owned or controlled by
16 the religious organization;
17    (b) Requires a religious organization to obtain insurance
18 pertaining to the liability of a municipality with respect to
19 homeless persons housed on property owned by a religious organization
20 or otherwise requires the religious organization to indemnify the
21 municipality against such liability; ((or))
22    (c) Imposes permit fees in excess of the actual costs associated
23 with the review and approval of ((the required)) permit applications.
24 A city or town has discretion to reduce or waive permit fees for a
25 religious organization that is hosting the homeless;
26    (d) Specifically limits a religious organization's availability
27 to host an outdoor encampment on its property or property controlled
28 by the religious organization to fewer than six months during any
29 calendar year. However, a city or town may enact an ordinance or
30 regulation that requires a separation of time of no more than three
31 months between subsequent or established outdoor encampments at a
32 particular site;
33    (e) Specifically limits a religious organization's outdoor
34 encampment hosting term to fewer than four consecutive months;
35    (f) Limits the number of simultaneous religious organization
36 outdoor encampment hostings within the same municipality during any
37 given period of time. Simultaneous and adjacent hostings of outdoor
38 encampments by religious organizations may be limited if located
39 within one thousand feet of another outdoor encampment concurrently
40 hosted by a religious organization;

1  (g) Limits a religious organization's availability to host safe
2  parking efforts at its on-site parking lot, including limitations on
3  any other congregationally sponsored uses and the parking available
4  to support such uses during the hosting, except for limitations that
5  are in accord with the following criteria that would govern if
6  enacted by local ordinance or memorandum of understanding between the
7  host religious organization and the jurisdiction:
8  (i) No less than one space may be devoted to safe parking per ten
9  on-site parking spaces;
10 (ii) Restroom access must be provided either within the buildings
11 on the property or through use of portable facilities, with the
12 provision for proper disposal of waste if recreational vehicles are
13 hosted; and
14 (iii) Religious organizations providing spaces for safe parking
15 must continue to abide by any existing on-site parking minimum
16 requirement so that the provision of safe parking spaces does not
17 reduce the total number of available parking spaces below the minimum
18 number of spaces required by the city or town, but a city or town may
19 enter into a memorandum of understanding with a religious
20 organization that reduces the minimum number of on-site parking
21 spaces required;
22 (h) Limits a religious organization's availability to host an
23 indoor overnight shelter in spaces with at least two accessible exits
24 due to lack of sprinklers or other fire-related concerns, except
25 that:
26 (i) If a city or town fire official finds that fire-related
27 concerns associated with an indoor overnight shelter pose an imminent
28 danger to persons within the shelter, the city or town may take
29 action to limit the religious organization's availability to host the
30 indoor overnight shelter; and
31 (ii) A city or town may require a host religious organization to
32 enter into a memorandum of understanding for fire safety that
33 includes local fire district inspections, an outline for appropriate
34 emergency procedures, a determination of the most viable means to
35 evacuate occupants from inside the host site with appropriate
36 illuminated exit signage, panic bar exit doors, and a completed fire
37 watch agreement indicating:
38 (A) Posted safe means of egress;
39 (B) Operable smoke detectors, carbon monoxide detectors as
40 necessary, and fire extinguishers;

(C) A plan for monitors who spend the night awake and are familiar with emergency protocols, who have suitable communication devices, and who know how to contact the local fire department; or

(i) Limits a religious organization's ability to host temporary small houses on land owned or controlled by the religious organization, except for recommendations that are in accord with the following criteria:

(i) A renewable one-year duration agreed to by the host religious organization and local jurisdiction via a memorandum of understanding;

(ii) Maintaining a maximum unit square footage of one hundred twenty square feet, with units set at least six feet apart;

(iii) Electricity and heat, if provided, must be inspected by the local jurisdiction;

(iv) Space heaters, if provided, must be approved by the local fire authority;

(v) Doors and windows must be included and be lockable, with a recommendation that the managing agency and host religious organization also possess keys;

(vi) Each unit must have a fire extinguisher;

(vii) Adequate restrooms must be provided, including restrooms solely for families if present, along with handwashing and potable running water to be available if not provided within the individual units, including accommodating black water;

(viii) A recommendation for the host religious organization to partner with regional homeless service providers to develop pathways to permanent housing.

(3)(a) A city or town may enact an ordinance or regulation or take any other action that requires a host religious organization and a distinct managing agency using the religious organization's property, owned or controlled by the religious organization, for hostings to include outdoor encampments, temporary small houses on-site, indoor overnight shelters, or vehicle resident safe parking to enter into a memorandum of understanding to protect the public health and safety of both the residents of the particular hosting and the residents of the city or town.

(b) At a minimum, the agreement must include information regarding: The right of a resident in an outdoor encampment, vehicle resident safe parking, temporary small house on-site, or indoor overnight shelter to seek public health and safety assistance, the

resident's ability to access social services on-site, and the resident's ability to directly interact with the host religious organization, including the ability to express any concerns regarding the managing agency to the religious organization; a written code of conduct agreed to by the managing agency, if any, host religious organization, and all volunteers working with residents of the outdoor encampment, temporary small house on-site, indoor overnight shelter, or vehicle resident safe parking; and when a publicly funded managing agency exists, the ability for the host religious organization to interact with residents of the outdoor encampment, indoor overnight shelter, temporary small house on-site, or vehicle resident safe parking using a release of information.

(4) If required to do so by a city or town, any host religious organization performing any hosting of an outdoor encampment, vehicle resident safe parking, or indoor overnight shelter, or the host religious organization's managing agency, must ensure that the city or town or local law enforcement agency has completed sex offender checks of all adult residents and guests. The host religious organization retains the authority to allow such offenders to remain on the property. A host religious organization or host religious organization's managing agency performing any hosting of vehicle resident safe parking must inform vehicle residents how to comply with laws regarding the legal status of vehicles and drivers, and provide a written code of conduct consistent with area standards.

(5) Any host religious organization performing any hosting of an outdoor encampment, vehicle resident safe parking, temporary small house on-site, or indoor overnight shelter, with a publicly funded managing agency, must work with the city or town to utilize Washington's homeless client management information system, as provided for in RCW 43.185C.180. When the religious organization does not partner with a managing agency, the religious organization is encouraged to partner with a local homeless services provider using the Washington homeless client managing information system. Any managing agency receiving any funding from local continuum of care programs must utilize the homeless client management information system. Temporary, overnight, extreme weather shelter provided in religious organization buildings does not need to meet this requirement.

(6) For the purposes of this section((,)):

(a) "Managing agency" means an organization such as a religious organization or other organized entity that has the capacity to organize and manage a homeless outdoor encampment, temporary small houses on-site, indoor overnight shelter, and a vehicle resident safe parking program.

(b) "Outdoor encampment" means any temporary tent or structure encampment, or both.

(c) "Religious organization" means the federally protected practice of a recognized religious assembly, school, or institution that owns or controls real property.

(d) "Temporary" means not affixed to land permanently and not using underground utilities.

(((4))) (7)(a) Subsection (2) of this section does not affect a city or town policy, ordinance, memorandum of understanding, or applicable consent decree that regulates religious organizations' hosting of the homeless if such policies, ordinances, memoranda of understanding, or consent decrees:

(i) Exist prior to the effective date of this section;

(ii) Do not categorically prohibit the hosting of the homeless by religious organizations; and

(iii) Have not been previously ruled by a court to violate the religious land use and institutionalized persons act, 42 U.S.C. Sec. 2000cc.

(b) If such policies, ordinances, memoranda of understanding, and consent decrees are amended after the effective date of this section, those amendments are not affected by subsection (2) of this section if those amendments satisfy (a)(ii) and (iii) of this subsection.

(8) An appointed or elected public official, public employee, or public agency as defined in RCW 4.24.470 is immune from civil liability for (a) damages arising from the permitting decisions for a temporary encampment for the homeless as provided in this section and (b) any conduct or unlawful activity that may occur as a result of the temporary encampment for the homeless as provided in this section.

(9) A religious organization hosting outdoor encampments, vehicle resident safe parking, or indoor overnight shelters for the homeless that receives funds from any government agency may not refuse to host any resident or prospective resident because of age, sex, marital status, sexual orientation, race, creed, color, national origin, honorably discharged veteran or military status, or the presence of

1  any sensory, mental, or physical disability or the use of a trained
2  dog guide or service animal by a person with a disability, as these
3  terms are defined in RCW 49.60.040.
4      (10)(a) Prior to the opening of an outdoor encampment, indoor
5  overnight shelter, temporary small house on-site, or vehicle resident
6  safe parking, a religious organization hosting the homeless on
7  property owned or controlled by the religious organization must host
8  a meeting open to the public for the purpose of providing a forum for
9  discussion of related neighborhood concerns, unless the use is in
10 response to a declared emergency. The religious organization must
11 provide written notice of the meeting to the city or town legislative
12 authority at least one week if possible but no later than ninety-six
13 hours prior to the meeting. The notice must specify the time, place,
14 and purpose of the meeting.
15     (b) A city or town must provide community notice of the meeting
16 described in (a) of this subsection by taking at least two of the
17 following actions at any time prior to the time of the meeting:
18     (i) Delivering to each local newspaper of general circulation and
19 local radio or television station that has on file with the governing
20 body a written request to be notified of special meetings;
21     (ii) Posting on the city or town's web site. A city or town is
22 not required to post a special meeting notice on its web site if it:
23 (A) Does not have a web site; (B) employs fewer than ten full-time
24 equivalent employees; or (C) does not employ personnel whose duty, as
25 defined by a job description or existing contract, is to maintain or
26 update the web site;
27     (iii) Prominently displaying, on signage at least two feet in
28 height and two feet in width, one or more meeting notices that can be
29 placed on or adjacent to the main arterials in proximity to the
30 location of the meeting; or
31     (iv) Prominently displaying the notice at the meeting site.

32     **Sec. 4.** RCW 35A.21.360 and 2010 c 175 s 4 are each amended to
33 read as follows:
34     (1) A religious organization may host ((temporary encampments
35 for)) the homeless on property owned or controlled by the religious
36 organization whether within buildings located on the property or
37 elsewhere on the property outside of buildings.

 (2) Except as provided in subsection (7) of this section, a code city may not enact an ordinance or regulation or take any other action that:

 (a) Imposes conditions other than those necessary to protect public health and safety and that do not substantially burden the decisions or actions of a religious organization regarding the location of housing or shelter, such as an outdoor encampment, indoor overnight shelter, temporary small house on-site, or vehicle resident safe parking, for homeless persons on property owned or controlled by the religious organization;

 (b) Requires a religious organization to obtain insurance pertaining to the liability of a municipality with respect to homeless persons housed on property owned by a religious organization or otherwise requires the religious organization to indemnify the municipality against such liability; ((or))

 (c) Imposes permit fees in excess of the actual costs associated with the review and approval of ((the required)) permit applications. A code city has discretion to reduce or waive permit fees for a religious organization that is hosting the homeless;

 (d) Specifically limits a religious organization's availability to host an outdoor encampment on its property or property controlled by the religious organization to fewer than six months during any calendar year. However, a code city may enact an ordinance or regulation that requires a separation of time of no more than three months between subsequent or established outdoor encampments at a particular site;

 (e) Specifically limits a religious organization's outdoor encampment hosting term to fewer than four consecutive months;

 (f) Limits the number of simultaneous religious organization outdoor encampment hostings within the same municipality during any given period of time. Simultaneous and adjacent hostings of outdoor encampments by religious organizations may be limited if located within one thousand feet of another outdoor encampment concurrently hosted by a religious organization;

 (g) Limits a religious organization's availability to host safe parking efforts at its on-site parking lot, including limitations on any other congregationally sponsored uses and the parking available to support such uses during the hosting, except for limitations that are in accord with the following criteria that would govern if

1  enacted by local ordinance or memorandum of understanding between the
2  host religious organization and the jurisdiction:
3  (i) No less than one space may be devoted to safe parking per ten
4  on-site parking spaces;
5  (ii) Restroom access must be provided either within the buildings
6  on the property or through use of portable facilities, with the
7  provision for proper disposal of waste if recreational vehicles are
8  hosted; and
9  (iii) Religious organizations providing spaces for safe parking
10 must continue to abide by any existing on-site parking minimum
11 requirement so that the provision of safe parking spaces does not
12 reduce the total number of available parking spaces below the minimum
13 number of spaces required by the code city, but a code city may enter
14 into a memorandum of understanding with a religious organization that
15 reduces the minimum number of on-site parking spaces required;
16 (h) Limits a religious organization's availability to host an
17 indoor overnight shelter in spaces with at least two accessible exits
18 due to lack of sprinklers or other fire-related concerns, except
19 that:
20 (i) If a code city fire official finds that fire-related concerns
21 associated with an indoor overnight shelter pose an imminent danger
22 to persons within the shelter, the code city may take action to limit
23 the religious organization's availability to host the indoor
24 overnight shelter; and
25 (ii) A code city may require a host religious organization to
26 enter into a memorandum of understanding for fire safety that
27 includes local fire district inspections, an outline for appropriate
28 emergency procedures, a determination of the most viable means to
29 evacuate occupants from inside the host site with appropriate
30 illuminated exit signage, panic bar exit doors, and a completed fire
31 watch agreement indicating:
32 (A) Posted safe means of egress;
33 (B) Operable smoke detectors, carbon monoxide detectors as
34 necessary, and fire extinguishers;
35 (C) A plan for monitors who spend the night awake and are
36 familiar with emergency protocols, who have suitable communication
37 devices, and who know how to contact the local fire department; or
38 (i) Limits a religious organization's ability to host temporary
39 small houses on land owned or controlled by the religious

1  organization, except for recommendations that are in accord with the
2  following criteria:
3      (i) A renewable one-year duration agreed to by the host religious
4  organization and local jurisdiction via a memorandum of
5  understanding;
6      (ii) Maintaining a maximum unit square footage of one hundred
7  twenty square feet, with units set at least six feet apart;
8      (iii) Electricity and heat, if provided, must be inspected by the
9  local jurisdiction;
10     (iv) Space heaters, if provided, must be approved by the local
11 fire authority;
12     (v) Doors and windows must be included and be lockable, with a
13 recommendation that the managing agency and host religious
14 organization also possess keys;
15     (vi) Each unit must have a fire extinguisher;
16     (vii) Adequate restrooms must be provided, including restrooms
17 solely for families if present, along with handwashing and potable
18 running water to be available if not provided within the individual
19 units, including accommodating black water;
20     (viii) A recommendation for the host religious organization to
21 partner with regional homeless service providers to develop pathways
22 to permanent housing.
23     (3)(a) A code city may enact an ordinance or regulation or take
24 any other action that requires a host religious organization and a
25 distinct managing agency using the religious organization's property,
26 owned or controlled by the religious organization, for hostings to
27 include outdoor encampments, temporary small houses on-site, indoor
28 overnight shelters, or vehicle resident safe parking to enter into a
29 memorandum of understanding to protect the public health and safety
30 of both the residents of the particular hosting and the residents of
31 the code city.
32     (b) At a minimum, the agreement must include information
33 regarding: The right of a resident in an outdoor encampment, vehicle
34 resident safe parking, temporary small house on-site, or indoor
35 overnight shelter to seek public health and safety assistance, the
36 resident's ability to access social services on-site, and the
37 resident's ability to directly interact with the host religious
38 organization, including the ability to express any concerns regarding
39 the managing agency to the religious organization; a written code of
40 conduct agreed to by the managing agency, if any, host religious

1  organization, and all volunteers working with residents of the
2  outdoor encampment, temporary small house on-site, indoor overnight
3  shelter, or vehicle resident safe parking; and when a publicly funded
4  managing agency exists, the ability for the host religious
5  organization to interact with residents of the outdoor encampment,
6  indoor overnight shelter, temporary small house on-site, or vehicle
7  resident safe parking using a release of information.
8      (4) If required to do so by a code city, any host religious
9  organization performing any hosting of an outdoor encampment, vehicle
10 resident safe parking, or indoor overnight shelter, or the host
11 religious organization's managing agency, must ensure that the code
12 city or local law enforcement agency has completed sex offender
13 checks of all adult residents and guests. The host religious
14 organization retains the authority to allow such offenders to remain
15 on the property. A host religious organization or host religious
16 organization's managing agency performing any hosting of vehicle
17 resident safe parking must inform vehicle residents how to comply
18 with laws regarding the legal status of vehicles and drivers, and
19 provide a written code of conduct consistent with area standards.
20     (5) Any host religious organization performing any hosting of an
21 outdoor encampment, vehicle resident safe parking, temporary small
22 house on-site, or indoor overnight shelter, with a publicly funded
23 managing agency, must work with the code city to utilize Washington's
24 homeless client management information system, as provided for in RCW
25 43.185C.180. When the religious organization does not partner with a
26 managing agency, the religious organization is encouraged to partner
27 with a local homeless services provider using the Washington homeless
28 client managing information system. Any managing agency receiving any
29 funding from local continuum of care programs must utilize the
30 homeless client management information system. Temporary, overnight,
31 extreme weather shelter provided in religious organization buildings
32 does not need to meet this requirement.
33     (6) For the purposes of this section((,)):
34     (a) "Managing agency" means an organization such as a religious
35 organization or other organized entity that has the capacity to
36 organize and manage a homeless outdoor encampment, temporary small
37 houses on-site, indoor overnight shelter, and a vehicle resident safe
38 parking program.
39     (b) "Outdoor encampment" means any temporary tent or structure
40 encampment, or both.

(c) "Religious organization" means the federally protected practice of a recognized religious assembly, school, or institution that owns or controls real property.

(d) "Temporary" means not affixed to land permanently and not using underground utilities.

(((4))) (7)(a) Subsection (2) of this section does not affect a code city policy, ordinance, memorandum of understanding, or applicable consent decree that regulates religious organizations' hosting of the homeless if such policies, ordinances, memoranda of understanding, or consent decrees:

(i) Exist prior to the effective date of this section;

(ii) Do not categorically prohibit the hosting of the homeless by religious organizations; and

(iii) Have not been previously ruled by a court to violate the religious land use and institutionalized persons act, 42 U.S.C. Sec. 2000cc.

(b) If such policies, ordinances, memoranda of understanding, and consent decrees are amended after the effective date of this section, those amendments are not affected by subsection (2) of this section if those amendments satisfy (a)(ii) and (iii) of this subsection.

(8) An appointed or elected public official, public employee, or public agency as defined in RCW 4.24.470 is immune from civil liability for (a) damages arising from the permitting decisions for a temporary encampment for the homeless as provided in this section and (b) any conduct or unlawful activity that may occur as a result of the temporary encampment for the homeless as provided in this section.

(9) A religious organization hosting outdoor encampments, vehicle resident safe parking, or indoor overnight shelters for the homeless that receives funds from any government agency may not refuse to host any resident or prospective resident because of age, sex, marital status, sexual orientation, race, creed, color, national origin, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability, as these terms are defined in RCW 49.60.040.

(10)(a) Prior to the opening of an outdoor encampment, indoor overnight shelter, temporary small house on-site, or vehicle resident safe parking, a religious organization hosting the homeless on property owned or controlled by the religious organization must host

a meeting open to the public for the purpose of providing a forum for discussion of related neighborhood concerns, unless the use is in response to a declared emergency. The religious organization must provide written notice of the meeting to the code city legislative authority at least one week if possible but no later than ninety-six hours prior to the meeting. The notice must specify the time, place, and purpose of the meeting.

(b) A code city must provide community notice of the meeting described in (a) of this subsection by taking at least two of the following actions at any time prior to the time of the meeting:

(i) Delivering to each local newspaper of general circulation and local radio or television station that has on file with the governing body a written request to be notified of special meetings;

(ii) Posting on the code city's web site. A code city is not required to post a special meeting notice on its web site if it: (A) Does not have a web site; (B) employs fewer than ten full-time equivalent employees; or (C) does not employ personnel whose duty, as defined by a job description or existing contract, is to maintain or update the web site;

(iii) Prominently displaying, on signage at least two feet in height and two feet in width, one or more meeting notices that can be placed on or adjacent to the main arterials in proximity to the location of the meeting; or

(iv) Prominently displaying the notice at the meeting site.

Passed by the House March 7, 2020.
Passed by the Senate March 3, 2020.
Approved by the Governor March 31, 2020.
Filed in Office of Secretary of State March 31, 2020.

--- END ---