Ethan Jones, WSBA No. 46911
Anthony Aronica, WSBA No. 54725
Nicholas Kahmann, WSBA No. 60602
Yakama Nation Office of Legal Counsel
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
(509) 865-7268
ethan@yakamanation-olc.org
anthony@yakamanation-olc.org
nick@yakamanation-olc.org

Attorneys for the Confederated Tribes and Bands of the Yakama Nation

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| CONFEDERATED TRIBES AND BANDS OF THE YAKAMA NATION, a sovereign federally recognized Indian Tribe,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF TOPPENISH, a municipality of the State of Washington,<br><br>Defendant. | **Case No.: 1:24-cv-03189**<br><br>PLAINTIFF YAKAMA NATION'S RESPONSE BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION<br><br>Hearing Date: January 14, 2025<br>Time: 11:00 am<br>Location: Yakima Courtroom 324<br>Judge: Hon. Mary K. Dimke |

    The Yakama Nation is likely to succeed on the merits because its exercise of civil jurisdiction satisfies the second *Montana* exception and preempts the City's competing assertion of authority, and the City has entirely failed to offer a viable counterargument. The City also does not challenge, and has therefore conceded, that the Yakama Nation will likely suffer irreparable harm absent preliminary relief. The City's only identified equitable or public interest is ensuring that a sprinkler system

PLAINTIFF YAKAMA NATION'S RESPONSE BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 1

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

replace the fire extinguishers stationed in every room of the Yakama Nation's Iniitnu't Emergency Cold Weather Shelter. This minimal interest pales in comparison to the Yakama Nation's significant interest in protecting its unhoused Yakama Members from serious injury or death as a result of the Yakama Reservation's extreme cold weather conditions.

The Yakama Nation has met its burden to secure a preliminary injunction. The Yakama Nation respectfully requests a preliminary injunction that permits the Yakama Nation to continue allowing the Yakima Valley Farmworkers Clinic to host a 24-hour emergency cold weather shelter during the pendency of this lawsuit.

## I.   FACTUAL BACKGROUND

Since the Yakama Nation's Iniitnu't Emergency Cold Weather Shelter ("Shelter") began operating 24-hours per day on November 27, 2024 in the City of Toppenish within the Yakama Reservation, the Shelter has served 179 different individuals. Second Decl. of Jenece Howe in Supp. of Yakama Nation's Response Brief at 2 (January 10, 2025) (hereafter "Second Howe Decl."). On average, 85% of Shelter patrons have been enrolled Yakama Members. Second Howe Decl. at 2.

Emergency services have been called to the Shelter on 21 occasions to provide medical assistance to Shelter occupants, to remove patrons that violate Shelter policies, and to treat two drug overdoses within the Shelter. Second Howe Decl. at 2-3. Emergency services also responded to two additional drug overdoses off-site and adjacent to the Shelter. Second Howe Decl. at 3. Yakama Nation Police have been the primary responders to emergency response calls at the Shelter. Second Howe Decl. at 3.

Since the Shelter opened, it has provided its occupants with shelter, food, water, community health vaccines, and access to tribal housing, tribal behavioral

PLAINTIFF YAKAMA NATION'S RESPONSE BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 2

**YAKAMA NATION**
**OFFICE OF LEGAL COUNSEL**
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

health services, People for People transportation services, medicine recovery services, Indian Health Service medical services, and charitable services from Catholic Charities, Sacred Road, and Rod's House. Second Howe Decl. at 2. Several patrons have been enrolled in housing services, drug rehabilitation programs, and received medical care as a result of using the Shelter. Second Howe Decl. at 2. The Shelter has saved unhoused Yakama Members from serious injury or death that they would have otherwise faced due to the Yakama Reservation's extreme cold weather conditions. Second Howe Decl. at 3.

## II.    ARGUMENT

### A.    *Montana's* Exceptions Govern The Scope Of The Yakama Nation's Jurisdiction Over Non-Indians Without Regard For Whether The City Of Toppenish Has Conflicting Jurisdiction.

When analyzing whether a federally recognized Indian Tribe has civil regulatory jurisdiction over non-Indians on non-Indian fee land within an Indian Reservation, it is well-established that Courts review the scope of the Tribe's jurisdiction using *Montana* and its exceptions. *United States v. Cooley*, 593 U.S. 345, 350 (2021). The City concedes as much by reciting *Montana's* general rule and exceptions at the outset of its Supplemental Response Brief. ECF No. 20 at 2-3. Rather than address *Montana* head on, the City asserts that *Montana* does not apply because the City has deemed the failure to install commercial sprinklers to be a misdemeanor (i.e., criminal) offense. ECF No. 20 at 3. As the City's logic goes, (1) *Montana* only applies to tribal exercises of civil jurisdiction, not criminal jurisdiction, (2) the City assigned a misdemeanor penalty to failing to adhere to its municipal building code governing fire suppression systems, and (3) this case is therefore about criminal jurisdiction, *Montana* does not apply, and the City wins.

PLAINTIFF YAKAMA NATION'S RESPONSE BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 3

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

ECF No. 20 at 3. In other words, the City declares this case to be a dispute about criminal jurisdiction so that it does not have to address *Montana*. The City's logic and resulting arguments fail on multiple accounts.

The City assumes without citation to legal authority that its own municipal jurisdiction is relevant here. This case is about the scope of the Yakama Nation's jurisdiction. The relevant inquiry is whether the Yakama Nation can authorize the Yakima Valley Farmworkers Clinic to host the Shelter. The City fails to cite a single case that suggests its own municipal jurisdiction is relevant to whether the Yakama Nation has civil jurisdiction here as a matter of law. *Montana* does not afford the City's municipal jurisdiction any modicum of relevance. *Montana v. United States*, 450 U.S. 544 (1981). There is no legal support for the proposition that municipalities located within Indian reservations can deprive tribes of civil regulatory jurisdiction over non-Indians under *Montana* by merely installing a misdemeanor penalty onto a civil municipal ordinance. Giving municipalities such broad power to usurp tribal authority through simple ordinance changes would be unbelievably damaging to tribal sovereignty throughout Indian County. Non-Indian municipalities across Indian Country could deprive tribes of the ability to protect tribal political integrity, economic security, and health and welfare with a simple vote of the City Council. The City's argument is entirely unsupported by the law, and should be rejected.

The City's argument also fails because its building code is not criminal in nature. The City's entire argument turns on its assertion that Toppenish Municipal Code Chapters 1.24 and 15.01, and International Fire Code Section 110.4, are enforceable through criminal penalties, thereby rendering the municipal building code itself to be criminal in nature. ECF No. 20 at 3-5; *but see, e.g., California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 211 (1987) (the fact that an

PLAINTIFF YAKAMA NATION'S RESPONSE BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 4

**YAKAMA NATION**
**OFFICE OF LEGAL COUNSEL**
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

otherwise civil regulatory law is enforceable by criminal as well as civil means does not convert it into a criminal law). The City offers no citation to precedent supporting its characterization of its municipal building code as criminal. ECF No. 20 at 3-5. To the contrary, the Supreme Court has consistently applied a legal test to determine whether regulations are criminal or civil in a different legal context, and that test strongly suggests that the City's municipal building code is civil. *Cabazon Band of Mission Indians*, 480 U.S. at 209-10.

In *Ysleta del sur Pueblo v. Texas*, 596 U.S. 685 (2022), the Supreme Court considered whether state bingo regulations were civil or criminal in nature, which they determined by analyzing whether the state outright prohibited all forms of bingo making the regulations criminal, or whether the state allowed at least some forms of bingo under heavy regulations making those regulations civil. *Ysleta del sur Pueblo*, 596 U.S. at 700. Because the State allowed but heavily regulated bingo, the regulations were deemed civil in nature. *Id*. at 700-01. Here, the City does not prohibit access to, or use of buildings without fire suppression systems (as previously stated, the City has in fact permitted overnight shelter use in the exact structure at issue) so the municipal building code cannot be criminal in nature. ECF No. 13 at 26. By allowing certain fire suppression systems in certain contexts, the regulations are civil in nature. ECF No. 13 at 26. Even if we accept the City's flawed logic that the nature of its jurisdiction bears any relevance to this case, the municipal code provisions that it raises are civil; not criminal. *Montana* applies to this case.

Even if the City's municipal building code were criminal in nature, the Supreme Court has demonstrated that a third party government's criminal jurisdiction related in some way to the non-Indian conduct at issue in a *Montana* analysis has no impact on the applicability of *Montana* or the outcome of that

PLAINTIFF YAKAMA NATION'S RESPONSE BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 5

**YAKAMA NATION**
**OFFICE OF LEGAL COUNSEL**
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

1  analysis. In *United States v. Cooley*, the Supreme Court applied *Montana* to
2  determine whether the Crow Tribe properly exercised civil regulatory authority to
3  stop and search a non-Indian on a state highway who was threatening public safety
4  by carrying assault weapons and methamphetamines in his vehicle. *Cooley*, 593 U.S.
5  at 350-51. The State and Federal Government had jurisdictional interests in the
6  criminal conduct of the non-Indian at issue in that case—and in fact the case arose
7  from the federal criminal prosecution of the non-Indian—but that did not dissuade
8  the Supreme Court from applying *Montana* to determine whether the exercise of
9  Tribal government authority through a stop and search of the non-Indian Defendant
10 was a valid exercise of civil regulatory jurisdiction. *Id.* The existence of a third party
11 government's criminal jurisdiction over the non-Indian conduct that was subject to
12 the Tribe's civil regulatory authority had no bearing on whether the *Montana*
13 analysis applied. Extending that reasoning here, even if the City's municipal building
14 code were criminal in nature, that is not relevant to whether the Yakama Nation has
15 civil regulatory authority to authorize the Yakima Valley Farmworkers Clinic to host
16 a 24-hour emergency cold weather shelter under *Montana*.

The City offers no meaningful challenge to the Yakama Nation's motion under *Montana*. The City's Supplemental Response Brief only cited two cases that applied *Montana*, with no discussion of either case: *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316 (2008), and *Atkinson Trading Co. v. Shirley*, 532 U.S. 645 (2001). Both cases are plainly distinguishable from this dispute under the second *Montana* exception because the Yakama Nation has a significant sovereign interest here in protecting the health and safety of its Members and the Tribe, which was not present in the City's two cited cases. *Plains Commerce Bank* considered and rejected a tribal court's jurisdiction over the sale of non-Indian fee land between two

PLAINTIFF YAKAMA NATION'S RESPONSE BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 6

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

non-Indian entities. *Plains Commerce Bank*, 554 U.S. at 320. *Atkinson Trading Co.* addressed whether a Tribe can impose a hotel occupancy tax on a business transaction between non-Indian hotel customers and a non-Indian hotel on non-Indian fee land within a Reservation. *Atkinson Trading Co.*, 532 U.S. at 647-49. In both cases, the Supreme Court found the Tribe's sovereign interests to be lacking in business transactions solely between non-Indians on non-Indian fee lands.

In contrast, in this case the Yakama Nation is regulating an interaction between non-Indians (Yakima Valley Farmworkers Clinic) and Indians (the Yakama Nation and its unhoused Yakama Members), and unhoused Yakama Members' lives are at stake. That brings this case much closer to the facts of *Cooley*, *Brendale*, *FMC Corp.*, *Rincon Mushroom Corp. of Am.*, *Glacier Elect. Coop.*, and *Alden Big Man*, all of which recognized tribal civil jurisdiction over non-Indian conduct that threatened or had a direct impact on a Tribe and its enrolled members. *Cooley*, 593 U.S. 345; *Brendale v. Confederated Tribes & Bands of the Yakima Indian Nation*, 492 U.S. 408 (1989) (addressing *Yakima Indian Nation v. Whiteside,* 617 F. Supp. 735 (E.D. Wash. 1985) (hereafter "*Whiteside I*"); *FMC Corp. v. Shoshone-Bannock Tribes*, 942 F.3d 916 (9th Cir. 2019); *Rincon Mushroom Corp. of Am. v. Mazzetti*, 2024 U.S. App. LEXIS 14952 (9th Cir. 2024) (unpublished); *Big Horn County Elect. Coop. v. Alden Big Man*, 526 F. Supp. 3d 756 (D. Mont. 2020); *Glacier Elect. Coop., Inc. v. Gervais*, 2015 U.S. Dist. LEXIS 193816 (D. Mont. 2015). The Yakama Nation satisfies the second *Montana* exception here, and the City's Response Brief does not argue otherwise.

As a side note, the Yakama Nation likely has civil jurisdiction under the first *Montana* exception as well. The first *Montana* exception recognizes tribal civil authority where a non-Indian entered into a consensual commercial relationship with

PLAINTIFF YAKAMA NATION'S RESPONSE BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 7

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

a Tribe or its Members. *Cooley*, 593 U.S. at 350. The Yakama Nation entered into a lease with the Yakima Valley Farmworkers Clinic that is governed by applicable Yakama Nation laws, and which secures the Yakama Nation's ability to operate the Shelter out of the Clinic's facility. Second Howe Decl. at 3. The Yakima Valley Farmworkers Clinic has therefore entered a consensual commercial relationship with the Yakama Nation, satisfying the first *Montana* exception. Under either *Montana* exception, the Yakama Nation possesses civil regulatory authority here.

**B.     The City Ordinance On Sprinkler Systems Conflicts With The Yakama Nation's Exercise Of Civil Jurisdiction And Is Preempted.**

The City's authority over non-Indian activities within city limits is "limited by the twin barriers of 'infringement on tribal sovereignty' and 'federal preemption.'" *Whiteside I*, 617 F. Supp. at 745-46. "When used in the context of Indian law, the doctrine of preemption is uniquely applied." *Whiteside I*, 617 F. Supp. at 746. "[A] preemption analysis rests principally on a consideration and balancing of the competing federal, [state] and tribal interests at stake." *Id.* When considering the interests of the federal government and tribes:

> Federal and tribal interests are assessed from a broad perspective. Traditional notions of Indian sovereignty and the federal government's commitment to the promotion and protection of tribal resources and cultural values are considerations which must be weighed on the preemption scales.

*Id.* In contrast, consideration of the City's interest "is guided by more narrow and specific considerations[,]" and concepts of state/county/municipal sovereignty and general municipal governmental interests "are of limited importance." *Id.* The City's interest would be substantial if it could "point to off-reservation effects that necessitate state [] intervention." *Id.*

PLAINTIFF YAKAMA NATION'S RESPONSE BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 8

**YAKAMA NATION**
**OFFICE OF LEGAL COUNSEL**
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

Applying this federal preemption test, the United States and Yakama Nation's interests far outweigh the City's interests, so the City's municipal building code is preempted. The United States has a federal trust obligation to promote, protect, and defend the Yakama Nation's right to self-determination, and the Yakama Nation's interest in protecting its enrolled Yakama Members strikes at the very heart of the Yakama Nation's continued political existence. In contrast, the City's only stated governmental interest is in having fire sprinklers instead of fire extinguishers in the Shelter. Not that there should be a fire suppression system in the first place, because the Yakama Nation has fire extinguishers stationed throughout the Shelter, but rather which fire suppression system is preferable. The City does not point to a single off-reservation impact from the Yakama Nation's exercise of jurisdiction here. The United States' and Yakama Nation's interests far outweigh the City's interests, so the relevant provisions of the City's municipal building code are preempted as a matter of law.

C. **The City Has Not Meaningfully Challenged The Yakama Nation On The Irreparable Harm, Balancing of Equities, And Public Interest Elements Of The Preliminary Injunction Standard.**

The City has not refuted, in briefing or at oral argument, the Yakama Nation's assertion that it will face irreparable harm absent preliminary relief in the form of the significant injury or death of unhoused Yakama Members. ECF No. 4 at 12-13. The City's silence should be treated as a concession of the second element of the preliminary injunction standard. *Intellicheck Mobilisa v. Wizz Sys., LLC*, 173 F. Supp. 3d 1085, 1108 (W.D. Wash. 2016) (citing *United States v. Great Am. Ins. Co. of NY*, 738 F.3d 1320, 1328 (Fed. Cir. 2013) for the proposition that "[i]t is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived.") The City expressly conceded during

PLAINTIFF YAKAMA NATION'S RESPONSE BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 9

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

the December 18, 2024 hearing that its only interest in this case is the difference in fire safety between a sprinkler system on the one hand, and fire extinguishers stationed in every room of the Shelter on the other hand. However, that interest is entirely undermined by the fact that the City permitted a non-Indian organization to operate a 24-hour shelter in the same building from 2020-2022 without the fire sprinkler system that the City requires today. ECF No. 13 at 4-5. The City's explanation for this differential treatment between a non-Indian organization and an Indian Tribe is that state law changed in 2020 to allow the City to enforce its sprinkler system requirements on homeless shelters.[1] ECF No. 20-1 at 2-3. But, the non-Indian organization operated in the same building without a sprinkler system, and with the City's approval, from 2020-2022 (i.e., after the law was changed). In other words, the City's identified state laws have not changed between the non-Indian organization's operation of the shelter, and the Yakama Nation's operation

---

[1] The City argued during the December 18, 2024 hearing that RCW 35A.21.360(7) allows the City to enforce Toppenish Municipal Code ("TMC") Chapter 15.01's sprinkler requirements against the Shelter. This state law argument has no bearing on the federal issues raised. Even if it were relevant, RCW 35A.21.360(7) only allows a code city to avoid RCW 35A.21.360(2)'s restrictions if the relevant code provisions were enacted prior to June 11, 2020. RCW 35A.21.360(7)(a)(i). The City repealed and replaced TMC Chapter 15.01 in its entirety pursuant to City Council Ordinance 2020-10 on September 14, 2020 (i.e., after June 11, 2020). Second Decl. of Ethan Jones in Supp. of Plaintiff Yakama Nation's Response Brief Ex. A, at 2 (January 10, 2025). Because TMC Chapter 15.01 was enacted *after* June 11, 2020, RCW 35A.21.360(7) does not apply and RCW 35A.21.360(2) restricts the City's ability to enforce TMC Chapter 15.01 here.

PLAINTIFF YAKAMA NATION'S RESPONSE BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 10

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

of the shelter. It is therefore unclear why the City allowed non-Indians to operate the shelter, but will not allow Indians to operate the shelter.

In contrast, the Yakama Nation has a significant interest in saving its enrolled Yakama Members from serious injury or death as a result of the Yakama Reservation's cold weather conditions. By extension, the Yakama Nation has a significant interest in protecting its own political integrity, health, and welfare. As previously briefed, every enrolled Yakama Member carries the unwritten laws, teachings, ceremonies, language, and songs of their ancestors, which they pass on to their children just as their elders passed on the Yakama culture to them. ECF No. 15 at 5. These are fundamental to the Yakama Nation's identity and sovereignty. There is no Yakama Nation without Yakama Members, which makes every Yakama Member critically important to the Yakama Nation's continued existence. These interests tip the equitable balance strongly in the Yakama Nation's favor, and the public interest is served by protecting unhoused Yakama Members and supporting the Yakama Nation's sovereign interests.

## IV.    CONCLUSION

The Yakama Nation requests that the Court grant its motion for a preliminary injunction, enjoining the City of Toppenish, and all persons acting on the City's behalf, from exercising civil jurisdiction to prevent the Yakama Nation from authorizing the Yakima Valley Farmworkers Clinic to host a 24-hour emergency cold weather shelter on non-Indian fee land within the Yakama Reservation.

Respectfully submitted this 10th day of January, 2025.

Ethan Jones, WSBA No. 46911
Anthony Aronica, WSBA No. 54725
Nicholas Kahmann, WSBA No. 60602

PLAINTIFF YAKAMA NATION'S RESPONSE BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 11

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268

YAKAMA NATION OFFICE OF LEGAL COUNSEL
P.O. Box 151, 401 Fort Road
Toppenish, WA 98948
Telephone: (509) 865-7268
Facsimile: (509) 865-4713
ethan@yakamanation-olc.org
anthony@yakamanation-olc.org

*Attorneys for the Confederated Tribes and Bands of the Yakama Nation*

PLAINTIFF YAKAMA NATION'S RESPONSE BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION — 12

YAKAMA NATION
OFFICE OF LEGAL COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
Phone (509) 865-7268